IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOSEPH M-R.,[1] | Case No. 3:24-cv-01934-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Joseph M-R. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 401 *et seq*. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405. For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff alleges disability based on "back injury/pain[,]" arthritis, post-traumatic stress disorder ("PTSD"), depression, anxiety, and "sleep interruptions[.]" Tr. 152, 171, 194, 222. At the time of Plaintiff's amended alleged onset date, he was 31 years old. Tr. 152. Plaintiff has a

high school education. Tr. 46, 103. He has past relevant work as a package handler and truck driver. Tr. 45

Plaintiff protectively applied for Disability Insurance Benefits ("DIB") and SSI on November 21, 2019, alleging an amended onset date of November 21, 2019. Tr. 96, 150-51, 170-71.

His applications were denied initially on November 24, 2020, and on reconsideration on October 8, 2021. Tr. 169, 190-91, 218, 246. Plaintiff subsequently requested a hearing, which was held on May 2, 2023, before Administrative Law Judge ("ALJ") Jo Hoenninger. Tr. 90. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 90-128. With the assistance of counsel, Plaintiff amended his alleged onset date to November 21, 2019. Tr. 95-96. On August 30, 2023, ALJ Hoenninger issued a decision denying Plaintiff's claim for SSI. Tr. 48. In the decision, the ALJ dismissed Plaintiff's claim for DIB, explaining that when Plaintiff amended the alleged onset date to November 21, 2019, Plaintiff was no longer "entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act because the claimant would not have disability insured status on the date of onset." Tr. 28. At issue in this appeal is only Plaintiff's SSI claim. Plaintiff requested Appeals Council review of Plaintiff's claim for SSI, which was denied on June 7, 2024. Tr. 1-7. Plaintiff then sought review before this Court.

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 21, 2019, his amended alleged onset date. Tr. 32.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "lumbar degenerative disc disease status post decompression/fusion, obesity, major depressive disorder, anxiety disorder, and attention-deficit/hyperactivity disorder (ADHD)[.]" Tr. 32.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 33. The ALJ then resolved that Plaintiff had the RFC to do light work with the following limitations:

> [H]e can stand and walk four hours in an eight-hour workday; can sit four hours in an eight-hour workday; should not operate foot controls; can occasionally climb ramps and stairs; should not climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach, handle, and finger with the right upper extremity; can tolerate occasional exposure to extreme heat, extreme cold, and hazards (such as unprotected heights and exposed moving mechanical parts); has sufficient concentration, persistence and pace to complete simple tasks for a normal workday and workweek; can tolerate occasional brief, routine interactions with the general public; and can tolerate frequent brief, routine social interactions with coworkers.

Tr. 37-38.

At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 45-46.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a marker, routing clerk, and "assembler, small products[.]" Tr. 46-47. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 47-48.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors: (1) failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony; and (2) improperly weighing medical opinion evidence that would preclude Plaintiff from sustaining full-time work.

### I. Subjective Symptom Testimony

Plaintiff first asserts that the ALJ improperly rejected his subjective symptom testimony. Pl.'s Opening Br. at 4. This Court disagrees.

#### A. Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.    Plaintiff's Testimony

Plaintiff reported that he had undergone L4-L5 fusion surgery but continued to have pain that worsened over time. Tr. 418. Plaintiff indicated that his chronic pain and inflammation limited his ability to work. Tr. 392. He explained that he manages his chronic pain by stretching, moving, walking, and laying down. Tr. 393. He reported that he "has a difficult time with most if not all daily activities" including brushing his teeth, cooking, cleaning, folding clothes, showering, grocery shopping, bending, lifting, and getting out of bed. Tr. 423. He explained that he helps with chores, but it "all comes with chronic pain[.]" Tr. 395. Plaintiff indicated that rock hounding is one of his hobbies, but his chronic pain has made this activity uncomfortable. Tr. 396. At the hearing, Plaintiff testified about his rockhounding activity explaining that the reason he had "taken up the rockhounding was because of [his] legs, [and] nerve damage in my legs" and that it "push[es] [him] past those times to have a goal or something to look forward to in the walks to make [himself] feel better[.]" Tr. 119. He further explained that he stretches a lot while he is rockhounding on the rocks, and the raw rocks help massage his feet aiding with blood flow. *Id.* Plaintiff testified that he had bad days "over half to three quarters of the time." Tr. 118. When the ALJ asked Plaintiff to describe a bad day, Plaintiff testified that a bad day for him "is feeling worthless or having so much pain that [he] feels . . . [he] would be better off not around those

kinds of feelings." Tr. 117. Plaintiff testified that he experiences nerve pain in his legs and feet since his L4/L5 fusion surgery. Tr. 118-19. He testified that his pain affects his ability to ambulate, and it limits him when he walks his dog. Tr. 118. He further explained that he spends his bad days with his dog and outside in nature as much as he can, or sometimes he just sits and watches television. *Id.*

The ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 38. Specifically, the ALJ discussed Plaintiff's activities of daily living, work activity, improvement with conservative treatment, and the objective medical evidence when discounting Plaintiff's subjective symptom testimony. Tr. 38-43.

Plaintiff argues the ALJ "us[ed] the [RFC] assessment as the comparison point rather than analyzing Plaintiff's allegations, which resulted in an erroneous evaluation of Plaintiff's symptom testimony." Pl.'s Opening Br. at 4 (citing *Laborin v. Berryhill*, 867 F.3d 1151 (9th Cir. 2017)). In *Laborin*, the Ninth Circuit held that the ALJ rejected the claimant's subjective symptom testimony by "[putting] the cart before the horse." 867 F.3d at 1154. Specifically, the ALJ in *Laborin* crafted an RFC and then rejected any portions of the plaintiff's testimony that did not align with the RFC, rather than taking the testimony into account to assess the RFC. *See id.* ("Because the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC.").

Here, the ALJ used similar language to that in *Laborin*, finding that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision . . . [and] they do not cause more restrictions than the residual functional capacity." Tr. 38-39. The ALJ also repeatedly stated throughout the decision that Plaintiff's impairments "do[] not result in limitations greater than the residual functional capacity." However, this boilerplate language "is not, by itself, reversible error and can be harmless." *Laborin*, 867 F.3d at 1154. The ALJ still provided specific, clear, and convincing reasons for discounting Plaintiff's testimony, and specifically explained how the evidence in the record was inconsistent with Plaintiff's specific allegations. Accordingly, the Court is not persuaded by Plaintiff's argument and turns to the ALJ's evaluation of Plaintiff's symptom testimony.

    **C.    Activities of Daily Living**

The ALJ properly relied on Plaintiff's activities of daily living when discounting his subjective symptom testimony. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

The ALJ acknowledged Plaintiff's report "that his daily activities were most impacted by his physical impairments rather than his mental ones." Tr. 35 (citing Tr. 1294). The ALJ discussed how contrary to Plaintiff's allegation that he could only walk 20-100 feet, and he had problems reaching, bending, squatting, kneeling, and using his hands, Plaintiff reported that he spends "most of his time" outside going on walks and hikes with his dog, hunting for rocks, and doing Native American arts and crafts. Tr. 39, 397, 42, 1294. The ALJ also discussed that Plaintiff usually gets rides from others, but he can take public transit, and he drives to medical appointments despite not having a license. Tr. 42

PAGE 9 – OPINION AND ORDER

Plaintiff's briefing does not speak to Plaintiff's activities of daily living, and instead Plaintiff reiterates that "the ALJ told only part of the story and gave no insights as to why Plaintiff's allegations were being rejected." Pl.'s Opening Br. at 10. The Court disagrees and finds that Plaintiff's activities of daily living are a clear and convincing reason to discount Plaintiff's testimony.

### D. Work Activity

An ALJ is entitled to rely on work activity along with other contemporaneous records to discount Plaintiff's testimony. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled.").

Here, the ALJ properly relied on Plaintiff's work activity when discounting his testimony that he is unable to sustain fulltime work. Plaintiff reported no earnings between 2013 and 2023. Tr. 32 (citing Tr. 377, 380-81). However, treatment notes from February 2023 show that Plaintiff told medical providers that he had recently been laid off from his job and had to move. Tr. 41 (citing Tr. 1381, 1400, 1439, 1470). The ALJ cited treatment notes where Plaintiff reported that he "works outside in rental maintenance" and Adderall was "making it possible for him to organize his thoughts at work." Tr. 35 (citing Tr. 1293, 1381-82, 1400, 1439-40, 1470). At the hearing, Plaintiff testified that he does maintenance on rental properties, and he partakes in "little tasks" such as fixing scratches on the ground, painting, sanding, and fixing things that "fall off or break." Tr. 100-01. These citations to the record suggest that Plaintiff was working under the table, which can be used to undermine a claim for disability. *See Greger v. Barnhart*, 464 F, 3d 968, 972 (9th Cir. 2006) (upholding a credibility finding where the claimant reported to the Department of Veterans Affairs that he "worked under the table" doing carpentry work).

Thus, Plaintiff's work activity is a clear and convincing reason to discount Plaintiff's testimony.

### E. Treatment History

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Conservative treatment can also be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162; SSR 16-3p, 2017 WL 5180304, at *9.

Here, the ALJ cited treatment notes showing that Plaintiff's physical and mental health impairments improved with conservative treatment. Regarding Plaintiff's physical impairments, the ALJ acknowledged that when Plaintiff filed his application in November 2019, he presented in mild distress and sought to establish care for his chronic pain in his arms and legs. Tr. 39 (citing Tr. 1250). The ALJ also acknowledged that Plaintiff told providers that he underwent a laminectomy in 2011, and that it only helped initially with his chronic back pain. *Id.* (citing Tr.

1284). The ALJ discussed Plaintiff's treatment notes from February 2020 when he started treatment at the Columbia Pain and Spine Institute. Tr. 39 (citing Tr. 1284). Specifically, the ALJ discussed that in September 2020, Plaintiff was prescribed Neurontin, and two months later, Plaintiff reported that he was feeling better about his back and radicular pain, although he experienced some balance issues secondary medication. Tr. 40 (citing Tr. 1345.) The ALJ found it notable that Plaintiff indicated he was satisfied with Neurontin and taking no other pain medications. *Id.* (citing Tr. 1345). A treatment note from October 2020 indicates that Dr. Satcher "referred [Plaintiff] to neurosurgery and ortho, but he did not go" and Plaintiff said "he forgot about the appointments." Tr. 1256. The ALJ discussed that in February 2021 Plaintiff again reported that Neurontin was effective and made "his feet better[.]" *Id.* (citing Tr. 1339). The ALJ discussed how in early 2021, epidural steroid injections were recommended to Plaintiff but acknowledged that his insurance did not cover the injections and the record is unclear as to whether or not he received the shots at a later date. *Id.* (citing Tr. 1337-38). However, the ALJ cited a treatment note from April 2021 documenting that Plaintiff "does not want to be on medication to help control his pain or anxiety" and he "[b]elieves in communion/connection with nature as therapeutic for the problems he faces." Tr. 40 (citing Tr. 1502).

As for Plaintiff's mental impairments the ALJ acknowledged that Plaintiff reported having problems with concentrating and completing tasks. Tr. 38. However, the ALJ cited treatment notes from October 2020, where Plaintiff reported that he had taken Adderall for the last two years and it "helped with concentration." Tr. 42 (citing Tr. 1293). The ALJ discussed how in 2022, Plaintiff reported that Adderall "is making it possible [for] him to organize his thoughts at work." *Id.* (citing Tr. 1293, 1381-82, 1400, 1439-1440). The ALJ cited multiple treatment notes from October 2020 to April 2023 where Plaintiff repeatedly stated that his

Adderall prescription was helping and he was "doing well[.]" *Id.* (citing Tr. 1293, 1381-82, 1400, 1439-1440). As for Plaintiff's anxiety, the ALJ reasoned that despite Plaintiff's reports of anxiety symptoms, he consistently presented with unremarkable mental status exam finding, and providers documented that he was in no acute distress, and exhibited no depression, anxiety or agitation. *Id.* (citing Tr. 1279, 1283, 1341, 1346). The ALJ again discussed how Plaintiff stated he specifically did not want to be on medication to help control his anxiety. *Id.* (citing Tr. 1502).

The ALJ appropriately considered the evidence when she determined that Plaintiff's symptoms were improved and were manageable with conservative treatment, and this was another clear and convincing basis to discount Plaintiff's symptom testimony.

### F.  Inconsistency With the Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

The ALJ found Plaintiff's subjective symptom testimony was "not entirely consistent with the medical evidence." Tr. 38. Regarding Plaintiff's physical impairments, the ALJ found that despite Plaintiff's reports of back pain, pain while standing, and radicular symptoms with restricted lumbar movement, he consistently presented in no acute distress and with intact coordination, and a full range of motion through his extremities. Tr. 39 (citing Tr. 1243, 1245, 1250, 1256-57, 1263, 1282-83, 1286-87, 1311-12, 1339-41, 1346, 1360-61, 1363-64, 1381, 1400, 1413, 1429-30, 1451, 1470-71, 1683 1687, 1693-94, 1698.) The ALJ also discussed that Plaintiff consistently presented with "grossly intact motor and sensory findings, normal muscle bulk and tone, normal 5/5 strength throughout" and had "very intermittent 4/5 findings in the upper extremities to include the hands, intact sensation and reflexes, [and] normal gait." *Id.* (citing Tr. 1243, 1245, 1250, 1256-57, 1263, 1282-83, 1286-87, 1311-12, 1339-41, 1346, 1360-61, 1363-64, 1381, 1400, 1413, 1429-30, 1451, 1470-71, 1683 1687, 1693-94, 1698.) The ALJ also acknowledged Plaintiff's MRI from March 2020 that "shows evidence of bilateral neuroforaminal narrowing at L3-4 and L4-5 status post fusion." Tr. 39-40 (citing Tr. 1281, 1341, 1346). However, the ALJ discussed that Plaintiff's subsequent imaging including x-rays from November 2022, showed that Plaintiff's cervical spine and shoulder are unremarkable. Tr. 41 (citing Tr. 1370-71, 1590-91 1633-34). The ALJ also discussed that Dr. Satcher, Plaintiff's treating physician documented that there "[was] not a clear etiology for his [chronic] pain" Tr. 40 (citing Tr. 1359). The ALJ reasonably considered the objective medical evidence regarding Plaintiff's physical impairments when discounting his testimony.

Regarding Plaintiff's mental impairments, the ALJ reasoned that despite Plaintiff's reports of having trouble getting along with others, and depressive and anxious symptoms, he consistently presented showing cooperative and normal mood and affect. Tr. 35 (citing Tr. 1243,

1245, 1250, 1279, 1283, 1341, 1346, 1361, 1363-64, 1381, 1400, 1413, 1429-30, 1451, 1470-71, 1683, 1687, 1693, 1698). The ALJ also found Plaintiff's reports of problems with memory inconsistent with exam notes from June and July of 2021 showing normal cognition and memory. Tr. 42 (citing Tr. 1361, 1364). However, the ALJ acknowledged that on examination in 2020, Plaintiff did demonstrate some trouble with memory, concentration, and expressing himself, and was slow in responding to questions, and reasonably found that Plaintiff was mildly limited in understanding, remembering or applying information. Tr. 34-35 (citing Tr. 1292, 1295). The ALJ also acknowledged that although Plaintiff was anxious and exhibiting some sleep disturbance, he denied behavioral problems, decreased concentration, and dysphoric mood. Tr. 42 (citing Tr. 1363). The ALJ reasonably considered the objective medical evidence regarding Plaintiff's mental impairments when discounting his testimony.

In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony based on his activities of daily living, work activity, improvement with conservative treatment, and the objective medical evidence was supported by specific, clear and convincing reasons.

**II.     Medical Opinion Evidence**

Plaintiff next asserts that the ALJ improperly rejected the medical opinion from Michelle Ashley, FNP. Pl.'s Opening Br. at 13. This Court disagrees.

**A.     Legal Standards**

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer

to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

      An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

B.  Analysis

Ms. Ashley completed a medical source statement in April 2023. Tr. 1676-78. She opined that Plaintiff's lumbar pain limited him to standing and sitting for only fifteen to twenty minutes at a time. Tr. 1677. She also opined that Plaintiff would need to lie down for thirty to forty-five minutes at a time. *Id.* Ms. Ashley indicated that Plaintiff was diagnosed with "anxiety disorder, major depressive disorder, lumbar post-laminectomy syndrome, chronic cervicalgia with pain/numbness in arms and hands." *Id.* She opined that Plaintiff engaging in work on a regular and continuous basis would increase his pain, as well as his anxiety. *Id.* She explained that Plaintiff's anxiety would worsen due to too much stimulation from people and noise, as well as visual stimulation. *Id.* She opined that Plaintiff would be absent from work more than four days per month due to his depression, anxiety. Tr. 1678. She explained that Plaintiff's physical and mental impairments make it hard for him to get out of bed, walk, and work. *Id.*

The ALJ found Ms. Ashley's opinion unpersuasive. Tr. 43. The ALJ reasoned that the limitations assessed by Ms. Ashely are "very significantly overstated" and inconsistent with the other medical opinions in the record. *Id.* The ALJ also found Ms. Ashley's opinion unpersuasive because "she had a relatively short treating relationship with few office visits during which time [Plaintiff] repeatedly indicated that he was working[.]" *Id.* The ALJ concluded that Plaintiff's impairments cause significantly less limitations than alleged by Ms. Ashely. *Id.*

Plaintiff argues that the ALJ's "reference to the duration of [Ms.] Ashley's treating relationship did not support her conclusions." Pl.'s Opening Br. at 14. Plaintiff asserts that ALJ's are generally not required to consider the nature and duration of a treating relationship. *Id.* (citing 20 C.F.R. § 404.1520c(c)(3). Plaintiff further argues that "a limited treating relationship is more informative than no relationship" and asserts that Ms. Ashley had the opportunity to make observations that aided in evaluating Plaintiff's impairments. *Id.* Plaintiff is correct that the ALJ

PAGE 17 – OPINION AND ORDER

is not *required* to consider the duration of a treating relationship, but the regulations make clear that she *may* consider a treating source's relationship with Plaintiff by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). Plaintiff's argument falls short and does not illustrate how the ALJ failed to support her conclusion with substantial evidence.

Plaintiff also argues that Ms. Ashley's treatment notes regarding Plaintiff's work activity on their own do "not contain enough information to be substantial evidence of an inconsistency with her opinion." Pl.'s Opening Br. at 14 (citing *Trevizo v. Berryhill*, 862 F.3d 664, 676 (9th Cir. 2017)). Plaintiff argues that the record offers more insight into Plaintiff's part-time work and cites his hearing testimony where he explained he was doing maintenance work on rental properties. Tr. 100-02. The Court finds that it was reasonable for the ALJ to conclude that any work activity conflicted with Ms. Ashley's opinion that "Plaintiff cannot perform labor due to pain in [his] back [and] arms, [and] anxiety." Tr. 1677. Additionally, as the Commissioner contends, the timeline of Plaintiff's work history suggests he was working another job under the table, before starting the maintenance work job. Def.'s Resp. Br. at 13. At the May 2023 hearing, Plaintiff testified that he was currently doing maintenance work and had been doing it for "the past few months" after he had lost the place he was living in however, Plaintiff reported to Ms. Ashley in February 2023 that he "recently ha[d] been laid off from his job [and] had to move[.]" Tr. 100-02, 1400. The Commissioner argues that this suggests he worked another job before beginning the maintenance work, given that Plaintiff started the maintenance work after the move. Def.'s Resp. Br. at 13. Plaintiff fails to clarify this inconsistency on reply. Accordingly,

PAGE 18 – OPINION AND ORDER

the Court finds that the ALJ's reasoning for discrediting Ms. Ashely's opinion that Plaintiff "cannot perform labor" was supported by substantial evidence.

Lastly Plaintiff argues that the ALJ's conclusion that Ms. Ashley's opinion is inconsistent with treatment notes from other providers is not supported by substantial evidence when considering the record in its entirety. Pl.'s Opening Br. at 15 (citing *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)). Plaintiff further argues that "none of the evidence referred to by the ALJ discussed Plaintiff's ability to engage in physical activity on a sustained basis" and the ALJ "[a]t most [she] described Plaintiff presentation on a very limited basis." *Id.* The Court finds that Plaintiff's argument falls short and misstates the standard. As discussed, to discredit a medical opinion, the ALJ discusses the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). The ALJ specifically found Ms. Ashley's opinion was unsupported by the exam notes with normal findings from Dr. Satcher, Dr. Alder, and other providers with the Columbia Pain and Spine Institute. *Id.* (citing Tr. 159-60, 162-67, 179-80, 182-188, 211-214, 239-42, 392-99, 1243, 1245, 1250, 1256-58, 1263, 1279, 1281-84, 128-87, 1289, 1292-94 1311-12, 1314, 1337-1341, 1345-46, 1358-61, 1363-65, 1370-71, 1381-82, 1400, 1413-14, 1429-30, 1439-40, 1451-52, 1470-71, 1502-03, 1590-91, 1633-34, 1683, 1687-88, 1693-94, 1698-1700). These examinations took place from 2019 to 2023 and provide detail about Plaintiff's impairments. These treatment notes show that Plaintiff often denied pharmacologic management and his symptoms were better when he adhered to his medication regimen, he was referred for neurosurgery and pain management and did not go, and he was consistently able to ambulate freely moving all extremities with "5/5 strength[.]" Tr. 1243, 1245, 1256-58, 1279, 1283, 1341, 1345-46, 1359-61, 1451-52. Dr. Satcher documented that "t[h]ere is not a clear etiology for [Plaintiff's] pain." Tr. 1359. The ALJ also found

radiological imaging and treatment records "that thoroughly document [Plaintiff's] mental and physical functioning as well as his responsiveness to medication when he adheres to his prescription plans[.]" *Id.* (citing Tr. 159-60, 162-67, 179-80, 182-188, 211-214, 239-42, 392-99, 1243, 1245, 1250, 1256-58, 1263, 1279, 1281-84, 128-87, 1289, 1292-94 1311-12, 1314, 1337-1341, 1345-46, 1358-61, 1363-65, 1370-71, 1381-82, 1400, 1413-14, 1429-30, 1439-40, 1451-52, 1470-71, 1502-03, 1590-91, 1633-34, 1683, 1687-88, 1693-94, 1698-1700).

For these reasons, the ALJ's conclusion that Ms. Ashley's medical opinion was unpersuasive complies with the regulations governing the Commissioner's evaluation of medical opinions and is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 6th day of October, 2025.

ANDREW HALLMAN
United States Magistrate Judge